UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
THOMAS BROADHURST,                          :
                                            :
                        Petitioner,         :
                                            :        04 Civ. 10149 (GEL)
            -v.-                            :
                                            :        **OPINION AND ORDER**
CALVIN WEST,                                :
                                            :
                        Respondent.         :
------------------------------------------------------------x

GERARD E. LYNCH, District Judge:

  Thomas Broadhurst seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in the New York State courts for sale of narcotics and consequent prison sentence of five to ten years as a second felony offender. The petition will be denied.

  Broadhurst was arrested on February 20, 2001, as a result of a buy and bust operation. An undercover police officer testified that on that date, he was solicited by a prostitute at 128th Street and Madison Avenue. He declined her offer, stating he was trying to buy crack. The prostitute said she would introduce him to a friend, who had some for sale, and directed him to wait. Shortly thereafter, Broadhurst appeared, and told the undercover officer that he "didn't have any," but would take the undercover officer where he could "get some." Broadhurst proposed that the undercover officer give him the money and he would go and get the crack. The undercover officer refused and insisted on dealing directly with the seller. Broadhurst acquiesced, left briefly, and then returned, saying, "No, let's go try my people." The group then walked to 123rd Street and Lenox Avenue, where Broadhurst said, "There go my people right there," apparently indicating two men standing near a brownstone, the only people in the immediate area.

The undercover officer asked one of the men, Darren Miller, for "eight." Miller told the group to "keep it moving." As the group approached the other man, David White, Broadhurst told the undercover officer to "give me the money," and assured White, "He's cool, he's with me." Miller then passed White a clear sandwich bag containing orange-topped vials, and returned to his station on a nearby stoop. The undercover gave $40 to Broadhurst, who passed it to White, who in turn took eight vials of crack from the bag he had just received and gave them to Broadhurst, who passed them to the undercover officer.

Shortly thereafter, the undercover officer radioed a description of the individuals from whom he had made the purchase to a field team, which responded to the scene and observed Broadhurst and White. They fled upon seeing the police, but were apprehended. Miller was arrested later in the same vicinity. The undercover officer positively identified all three men at the scene as the persons from whom he had purchased crack.

Broadhurst raises four arguments in support of his petition. None of them have merit.

1. Broadhurst argues that he was denied his right to a public trial. (Pet. 9; P. Mem. 2-5.) The trial court held a pre-trial evidentiary hearing in response to the prosecution's motion to close the courtroom during the testimony of the undercover officer. At the hearing, the officer testified that he worked regularly as an undercover officer in the East Harlem area and expected to continue working there. A number of suspects from whom he had purchased drugs, including one who had threatened him in the East Harlem area, either remained unapprehended or were free on bail pending trial. At the conclusion of the hearing, the court ruled that the courtroom would be closed during the testimony of the undercover officer. However, relatives of the defendants were permitted to remain in the courtroom during the testimony.

Broadhurst argued on appeal that the officer's testimony was too generalized to support the courtroom closure. The Appellate Division rejected that argument, holding that "The People made a sufficiently particularized showing to warrant closure where the officer testified that he continued to work in the vicinity of the defendants' arrest, received threats in the past, feared for his safety and the integrity of his ongoing operations, and took precautions when appearing in court." People v. Broadhurst, 761 N.Y.S.2d 167, 168 (1st Dep't 2003). Since the state courts rejected Broadhurst's constitutional claim on the merits, habeas relief may not be granted unless the state courts' decision was "contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent. 28 U.S.C. § 2254(d)(1).

The relevant Supreme Court precedent is Waller v. Georgia, 467 U.S. 39 (1984), which sets forth a four-part test for justifying a courtroom closure in the face of a defendant's Sixth Amendment right to a public trial: (1) the party seeking closure must advance an overriding interest that is likely to be prejudiced; (2) the closure must be no broader than necessary to protect that interest; (3) the trial court must consider reasonable alternatives to closure; and (4) the trial court must make specific findings adequate to support the closure. Id. at 48. The question is therefore whether the Appellate Division's approval of the closure in this case constituted an "unreasonable application" of the Waller standard.

First, "[t]he state interest in maintaining the continued effectiveness of an undercover officer is an extremely substantial interest." Ayala v. Speckard, 131 F.3d 62, 72 (2d Cir. 1997). The state court's finding that this interest might be prejudiced by public testimony in this case was not unreasonable. The officer testified that suspects from whom he had bought drugs in the vicinity of the present case had threatened to kill him if they learned he was a police officer, and

3

one of those suspects remained at large. He further testified that he took precautions to prevent his identity from being discovered, carried a concealed weapon when acting undercover, and had to draw that weapon on at least one occasion. He stated that he believed his work as an undercover officer would be compromised if his identity was disclosed.[1] The conclusion that open testimony would present a serious danger to the significant state interest in the officer's safety and effectiveness may not have been inevitable, but it was certainly reasonable. See Bobb v. Senkowski, 196 F.3d 350, 353 (2d Cir. 1999) (finding a courtroom closure justified, where an undercover officer testified that his effectiveness and safety would be compromised if his identity was revealed); Ayala, 131 F.3d at 65, 72 (same).

Second, the courtroom closure was narrowly tailored to the professed need. The court was closed to the public only during the undercover officer's testimony, but was open throughout the remainder of the trial. Moreover, the testimony was available to the public in the form of a transcript. See Bowden v. Keane, 237 F.3d 125, 130 (2d Cir. 2000) (finding the courtroom closure narrow, where courtroom was closed only during testimony of one witness, transcript was available to the public, and witness's testimony was not essential to the government's case). Finally, the trial court allowed members of defendants' families to remain in the courtroom during the testimony. The closure was thus as limited as it could be in order to

---

[1] Broadhurst argues that this testimony was "pretextual." (P. Mem. 2.) To the extent he means this to argue that the testimony was false (rather than simply that it is insufficient as a matter of law to support closure), the argument must be rejected. The state court found the testimony credible, and its factual finding is "presumed to be correct." 28 U.S.C. § 2254(e)(1). Nothing in Broadhurst's argument comes close to rebutting that presumption by "clear and convincing evidence," id., or to establishing that the court's decision was based on an "unreasonable determination of the facts." Id. at § 2254(d)(2). There is simply no reason to believe that the officer falsified his testimony, or that his concern for his safety was a "pretext" for any ulterior motive for seeking closure of the courtroom.

protect the officer's identity.

Third, the trial court considered, and adopted, more limited alternatives to a complete closure of the proceedings, by closing the courtroom only for a limited period and only to non-family members. Broadhurst does not contend that he suggested any more limited alternatives to the court, and since the closing was limited, including by the court's *sua sponte* authorization for family members to remain, no further *sua sponte* consideration of other alternatives is required. Ayala, 131 F.3d at 71.

Finally, the trial court found that "there is enough of a reason to close the courtroom" because it was "justified under the circumstances." (9/8/01 Hinton hearing Tr. 15) While the trial court did not make specific factual findings, satisfying the fourth prong of Waller by "specific findings . . . [is] not necessary if we can glean sufficient support for a partial temporary closure from the record," Bowden, 237 F.3d at 132, quoting United States v. Farmer, 32 F.3d 369, 371 (8th Cir. 1994). The trial court heard uncontroverted testimony from the undercover officer, who was subject to cross-examination. At the pre-trial hearing, the undercover officer testified that he had participated in "hundreds" of "buy and bust" operations as an undercover officer, but that "not all" suspects had been captured, that some had been "lost" or "released." (Id. at 3.) The officer stated that "at least twenty" cases where he made arrests were still pending. (Id. at 4.) He explained that he had been working as an undercover officer for two and a half years, "use[s] [his] shield number instead of [his] true name" "for anonymity," and planned to continue to do undercover work in the "foreseeable future" in the "same general vicinity," and that one consequence of testifying in open court was the "[p]ossibility of having [his] cover blown," which would "diminish [his] effectiveness." (Id. at 3, 5, 6.) Last, the

5

undercover officer testified that he had been threatened with physical violence at least twice "within the scope of working undercover out in the field." (Id. at 8-10.) He stated that "[p]eople knowing me to be a police officer would diminish my effectiveness as an undercover, . . . [and] that would compromise my safety if people had the upper hand on me." (Id. at 6.) This testimony is sufficient evidence adequately supporting the courtroom closure.

2. Broadhurst argues that the trial court's failure to give the jury an "agency" defense denied him due process by depriving him of the opportunity to present a legitimate defense. (Pet. 10; P. Mem. 6-8.) The Appellate Division held that "the court properly denied [the] request for an agency charge. Even when viewed most favorably to defendant, there was no reasonable view of the evidence that he was a mere extension of the buyer and not a participant in the sale." Broadhurst, 761 N.Y.S.2d at 168.

The correctness of the trial court's jury instructions as a matter of state law does not raise a federal question unless the error "so infect[s] the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 72 (1991), quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973). In deciding whether the evidence warrants an instruction on a particular defense under state law, federal courts "must of course defer to state-court interpretations of the state's laws, so long as those interpretations are themselves constitutional." Davis v. Strack, 270 F.3d 111, 124 n.4 (2d Cir. 2001). Under New York law, "entitlement to an agency charge depends entirely on the relationship between the buyer and the defendant. Unless some reasonable view of the evidence supports the theory that defendant was acting only on behalf of the buyer, the jury need not be instructed on the agency defense." People v. Herring, 83 N.Y.2d 780, 782 (1994). The defense is available only where the defendant was "a mere

6

instrumentality of the buyer." People v. Ortiz, 76 N.Y.2d 446, 449 (1990).

On the facts presented at trial, the refusal of the agency instruction was reasonable and did not deprive Broadhurst of a fair trial. The evidence reflected no prior acquaintance between Broadhurst and the undercover purchaser, but rather a relationship with the other sellers, whom he referred to as "my people." The transaction began when the undercover officer approached Broadhurst, who responded to the undercover officer's request for "eight" by stating that he "didn't have any," and asking the undercover officer for money so that he could obtain drugs to deliver to him. When the undercover officer refused, insisting on dealing directly with the person with the drugs, Broadhurst offered to take him to "my people," and identified White and Miller when he and the undercover officer arrived at the scene of the sale. The undercover officer gave $40 to Broadhurst, who passed it on to White. White got the crack vials from Miller, and passed them to Broadhurst, who then gave them to the undercover officer, all in the immediate presence of the undercover officer. Broadhurst stayed with White and Miller when the undercover officer left the scene, and was still there when the arrest team arrived a few minutes later. The state courts' conclusion that Broadhurst was not entitled to an agency instruction on these facts as a matter of state law cannot be found unreasonable.[2]

3. Broadhurst argues that the trial court denied him the right to testify in his own defense. (Pet. 7; P. Mem. 8-10.) A defendant clearly has that right. Rock v. Arkansas, 483 U.S. 44, 52

---

[2] Broadhurst's reliance on Mathews v. United States, 485 U.S. 58 (1988), is unavailing. Mathews holds, as a matter of federal law, that "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." Id. at 63. However, even assuming that this proposition is a component of constitutional due process, the critical question is whether the evidence is sufficient for a reasonable jury to accept the defense in question. Here, that is a question of state law. The state court's reading of the state court's agency defense is entitled to deference.

7

(1987).

Here, however, defendant rested without seeking to testify. He first sought to reopen his case and present testimony during the charge conference, after the People had put on a rebuttal case and rested. After the trial court declined Broadhurst's request for an agency charge, Broadhurst sought to reopen the case to permit him to testify. The trial judge denied the request, stating that "[w]hen an attorney decides he's not getting a charge he wants, it doesn't mean the case has to be reopened and we get some new testimony . . . . I can't have it that everybody rests, we have a charge conference, an attorney says I'm surprised what your charge is going to be, let's reopen the case, take another shot at it . . . . It [is] just not fair for one thing and it also allows the defense to easily tailor testimony to be consistent with what they find out later is going to be a charge." (Tr. 420, 429-30.) The Appellate Division held that "[t]he court properly exercised its discretion in denying [Broadhurst's] request, made during the charge conference after the People had presented a rebuttal case and all the parties had rested, to reopen the case and allow him to testify." 761 N.Y.S.2d at 168. That holding was correct.

No Supreme Court precedent establishes that a defendant has a right to reopen the case and testify after the close of all the evidence. The right to testify recognized in Rock as a matter of fundamental due process "is not without limitation." Franco v. Costello, 322 F. Supp. 2d 474, 478 (S.D.N.Y. 2004). That right may "bow to accommodate other legitimate interests in the criminal trial process," so long as any restrictions are not "arbitrary or disproportionate to the purposes they are designed to serve." Rock, 483 U.S. at 55-56.

The interest in orderly procedure is certainly a legitimate interest. New York law prescribes the ordinary order of events at trial. See N.Y. Crim. Proc. § 260.30. While New York

8

trial judges have discretion to vary the order of trial in appropriate circumstances, People v. Olsen, 34 N.Y.2d 349, 353 (1974), there was no abuse of discretion here. As the Appellate Division correctly held, Broadhurst "did not advance a valid reason for disturbing the normal order of trial." Broadhurst, 761 N.Y.S.2d at 168. Indeed, Broadhurst did not even make an offer of proof as to what his testimony would be, or how it could advance his agency defense. No rule of law or procedure, state or federal, statutory or constitutional, entitles a defendant to know how a judge will rule on projected requests for jury instructions before deciding whether to testify. Still less does the Constitution require that a defendant be entitled to reopen testimony after all parties have rested, in order to provide further support for a defense that the trial court has correctly ruled is not adequately grounded in the evidence presented.[3]

    4. Finally, Broadhurst argues that he was denied the effective assistance of counsel by his trial attorney's failure to raise an entrapment defense. (Pet. 6; P. Mem. 11-14.) To establish ineffective assistance, a defendant must show that counsel's errors fell below the standard of a reasonably competent practitioner and that he suffered prejudice as a result. Strickland v. Washington, 466 U.S. 668, 687 (1984). Broadhurst cannot meet this standard.

    Broadhurst's complaints about his lawyer have varied and shifted over time. On direct appeal, he argued that his attorney was ineffective because he "never sought to put [his client] on the stand until after he had rested." (Appellant's Br., Attias Decl. Ex. A, at 21.) This claim,

---

[3] For the same reasons, Broadhurst's jury instruction and reopening arguments fare no better if considered together rather than separately. Broadhurst made a deliberate decision not to testify, as was his right, and to rest on the evidence already in the record to present his defense. The trial judge correctly ruled that, on that record, no agency instruction need be given. That correct ruling lends no additional impetus to Broadhurst's claim that he should have been allowed to recast his strategy, reopen the case, present unspecified additional testimony, and then have another try at persuading the court to give an agency instruction.

9

however, is fatally flawed. The decision whether to testify or not is the defendant's, not his attorney's. Florida v. Nixon, 543 U.S. 176, ___, 125 S. Ct. 551, 560 (2004). Nothing in the record indicates, and Broadhurst does not claim, that his attorney did not advise him of this right, or that he himself did not participate in the decision. Neither Broadhurst nor his attorney ever indicated in the state proceedings, nor does Broadhurst argue here, that he wanted to testify, or that he did not understand that resting without taking the stand waived that right. (Attias Decl. Ex. B at 28.) To the extent that the claim was that his attorney was deficient in *advising* Broadhurst not to testify, it fares no better. Broadhurst provides no sworn testimony as to what his attorney advised. More importantly, if counsel advised Broadhurst not to testify, that was a reasonable strategic decision. Broadhurst had three prior felony convictions, and four prior convictions for drug selling. (Id. at 28-29.) Had he testified in support of an agency defense, these prior convictions would certainly have come into evidence. Moreover, the prosecutor had unsuccessfully sought to introduce such evidence in response to Broadhurst's anticipated agency defense. The trial judge had not merely rejected that effort, but had also indicated that he was not disposed to permit the prosecutor to reopen the case to present the evidence if an agency instruction were given. (Id. at 29.) Under these circumstances, the defense took a reasonable gamble that it would be able to obtain an agency instruction based on the People's evidence, without taking the risk of having the jury learn that Broadhurst was a frequently-convicted drug dealer – a fact that would have seriously damaged any agency defense.

In his initial petition to this Court, Broadhurst argued sketchily that "but for counsel's error, he would have acquired either [*sic*] the agency defense, or been able to testify at trial in presenting his version of the events." (Pet. ¶ 14.) To the extent Broadhurst argues that counsel

10

was ineffective in not securing an agency instruction, the argument must fail. As noted above, counsel sought an agency instruction, but the trial court correctly denied it. The decision to seek to present an agency defense was not unprofessional, as the evidence against Broadhurst was overwhelming, and some such effort at a technical defense was about the best that can be hoped for. Moreover, as the agency defense would likely have been devastated on cross-examination had Broadhurst sought to bolster it with his own testimony, the gamble that an instruction could be obtained without his testimony was not an unreasonable strategy. In any event, Broadhurst cannot demonstrate any prejudice, since he does not offer any alternative trial scenario under which counsel could either have persuaded the court to give the agency instruction *without* the defendant's testimony, or prevailed on such a defense, given the available impeachment material, if he had presented an agency defense *with* it.

Finally, in his fullest presentation to this Court, a memorandum of law submitted in reply to the respondent's opposition, Broadhurst takes still another approach, arguing that counsel was deficient in failing to present an entrapment defense, or alternatively "to conduct a reasonable investigation of the entrapment defense for presentation at trial." (P. Mem. 11.) This argument, which was never presented to the state courts, is unexhausted and procedurally defaulted. In any case, it is also totally devoid of merit. To the extent Broadhurst argues that counsel should have sought an entrapment instruction or argued entrapment to the jury, he ignores the inconvenient fact that the record totally belies any such defense. The undercover officer initiated the interaction by seeking to buy drugs from a prostitute, who introduced him to Broadhurst, who, she said, had crack for sale. Although Broadhurst professed not to have drugs in his possession, he responded with alacrity, undertaking on his own initiative to bring the officer to his "people"

11

to arrange the transaction. Nothing in the record would permit a reasonable jury to conclude that Broadhurst was induced by governmental persuasion to engage in a drug offense he was not predisposed to commit. Presenting the defense, moreover, would have opened the door to evidence of Broadhurst's prior drug-selling convictions, further vitiating any entrapment defense. Broadhurst's claim of failure to *investigate* a possible entrapment defense is nothing more than a form of words. He gives no indication of what leads counsel should have investigated, or what evidence any additional investigation could have uncovered. Just as during the discussion of reopening the case at the charge conference, Broadhurst does not present this Court with an alternative version of events, nor does he indicate what his own testimony on the subject of entrapment might have been, let alone what counsel might have learned by further investigation of an entrapment claim.

Accordingly, none of petitioner's varying claims of ineffective assistance has any merit.

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is denied. Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c)(2).

SO ORDERED.

Dated: New York, New York
January 11, 2005

_____
GERARD E. LYNCH
United States District Judge

12